UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID D'ANGELO,

          Plaintiff,

v.                                       Case No. 1:05-cv-004
                                       Hon. Wendell A. Miles

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for disability insurance benefits (DIB) and for supplemental security income (SSI).

Plaintiff was born on July 21, 1947 (AR 36).[1]  He attended special education classes, completed a GED and also completed vocational training for machine shop (AR 55).  He alleged a disability onset date of May 15, 2002 (AR 36).  Plaintiff had previous employment as a machine operator, assembly worker, and yard worker in lumber sales (AR 62).   Plaintiff identified his disabling conditions as a heart murmur from rheumatic heart disease, compressed disc in lower back and osteoarthritis in both hands (AR 49).  After administrative denial of plaintiff's claim, an ALJ reviewed plaintiff's claim *de novo* and entered a decision denying these claims on July 15, 2004 (AR 16-24).  This decision, which was later approved and modified by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

2

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases.  *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."  *Casey v. Secretary of Health*

*and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 23).  Second, the ALJ found that he suffered from severe impairments of: osteoarthritis; degenerative disc disease; history of T12 compression fracture; heart valve thickening; and small vessel ischemic changes of the brain (AR 23).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 23).

The ALJ decided at the fourth step that

> claimant's impairments preclude him from: lifting or carrying over 20 pounds at one time or more than 10 pounds frequently; using ladders, scaffolds, or ropes; more than occasional stooping, crouching, kneeling, crawling, ramp or stair climbing; using vibrating, pneumatic, torque or power tools.  The claimant can frequently, but not constantly handle, finger, reach or feel with the upper extremities.  The claimant has the residual functional capacity for light work.

(AR 21).  The ALJ found that plaintiff's past relevant work as a machine operator did not require the performance of work-related activities precluded by his residual functional capacity and that his medically determinable impairments did not prevent him from performing his past relevant work (AR 23).  Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 23-24).

4

## III. ANALYSIS

Plaintiff raises three issues on appeal.

**A.** **The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician as well as the opinion of a consulting physician.**

**B.** **The ALJ did not perform his duty to the plaintiff by properly  probing the relevant facts when plaintiff appeared unrepresented.**

The first two issues are interrelated.  First, plaintiff contends that the ALJ discredited the evidence from two of plaintiff's physicians, Drs. Coretti, Bleiberg and Sarvepalli.  Second, plaintiff contends that the ALJ's failure to consider this evidence was due, in part, to plaintiff's position as an unrepresented claimant:

> [W]hile the ALJ discredited the evidence from those doctors, he forgot to consider that [p]laintiff represented himself at the hearing, and any review of the evidence clearly shows that [p]laintiff simply kept resubmitting the same evidence over and over.  His learning disability was clearly proven by his attempts to prove this case.  Had the ALJ performed his duty toward [p]laintiff as required by the decision in Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1051-1052 (6th Cir. 1983), the complete medical records of the treating doctors would have been produced and the ALJ clearly would have not been able to simply dismiss them.  This is yet another reason to reverse this case.

Plaintiff's Brief at 11.

The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel.  *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*,

708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant).

        1.        **Treating physicians**

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

6

a.      **Dr. Bleiberg**

Marvin Bleiberg, M.D., a Diplomat of the American Board of Physical Medicine & Rehabilitation and of the American Board of Pain Medicine, began treating plaintiff on January 8, 2003 (AR 348).  The doctor diagnosed plaintiff as suffering from "lumbago, lumbar degenerative joint disease, history of a T12 compression fracture secondary to a moto vehicle accident, cervicalgia, cervical degenerative joint disease, tingling and numbness of the upper extremities, osteoarthritis, and a history of peptic ulcer disease" (AR 348).  On February 28, 2003, Dr. Bleiberg completed a physical residual functional capacity assessment, which found, among other limitations, that plaintiff  should lift less than ten pounds, could stand or walk less than two hours in an eight-hour workday, sit less than six hours in an eight-hour workday, never climb, balance, stoop, kneel, crouch or crawl  (AR 391- 98).  The doctor stated that plaintiff was capable of sedentary work only (AR 397).

On March 24, 2003, Dr. Bleiberg restricted plaintiff to less than full-time employment:

> These specific impairments limit his ability to function and therefore to work unrestricted on a full-time basis.  He is limited in his ability to stand, walk, and sit for any prolonged period of time.  He s currently under my treatment for these conditions.

(AR 348).  Dr. Bleiberg recommended that plaintiff return to work with the following restrictions:

1.      Sedentary work only.

2.      May work up to four hours per day.

3.      No lifting, pushing, or pulling greater than 10 pounds, preferably less.

4.      No bending or twisting, except on rare occasions as absolutely necessary.

5.      No kneeling, stooping, crouching, or squatting.

6.      Clinical duration should be permanent.

(AR 348).

The ALJ discounted Dr. Bleiberg's opinion because it was not well supported by the

evidence:

> Dr. Bleiberg noted that the claimant had positive x-ray evidence of arthritis.
> However, the absence of factual information provided by the doctor is striking.  Dr.
> Bleiberg furnished no discussion of abnormalities demonstrated by the claimant in
> terms of gait disturbance, range of motion, neurological dysfunction, or other clinical
> findings.  The only notations from the doctor's progress notes refer to medication
> refills.  Within the written record and testimony, the claimant repeatedly indicated
> that he was limited to sedentary [sic], and therefore, should be qualified for disability
> benefits.  Dr. Bleiberg seems to have uncritically accepted as true, the claimant's
> assertions regarding his limitations.  The overall record does not substantiate such
> a degree of restriction.  The doctor was likely not aware that the claimant did
> perform some work, albeit for a short duration after his alleged onset, during which
> he was on his feet throughout the day, and was required to lift upwards of 90 pounds.
> As Dr. Bleiberg's opinion that the claimant can perform no more than sedentary
> work is not well supported objectively, and is inconsistent with other substantial
> evidence in the record, it is accorded minimal weight.

(AR 21).

The ALJ has a duty to investigate the facts and develop the arguments both for and

against granting benefits.  *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).  Because plaintiff was

unrepresented by counsel, the ALJ had a special duty to scrupulously and conscientiously explore

all the relevant facts.  *See Lashley*, 708 F.2d at 1051-52.  The record includes virtually no medical

records of plaintiff's treatment with Dr. Bleiberg. Given the lack of support for Dr. Bleiberg's

opinions restricting plaintiff to less than full-time sedentary work, the ALJ should have performed

further investigation pursuant to SSR 96-5p, which provides in a subsection entitled, "Requirements

for Recontacting Treating Sources," as follows:

> Because treating source evidence (including opinion evidence) is important,
> if the evidence does not support a treating source's opinion on any issue reserved to

8

the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, www.ssa.gov.

Under these circumstances, the court concludes that the ALJ's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should obtain all of plaintiff's records from Dr. Bleiberg.

**b.     Dr. Sarvepalli**

Next, the ALJ concluded that the forms completed by Prakash Sarvepalli, M.D., were "of limited utility," because he did not make an independent appraisal of plaintiff's condition, but merely referenced Dr. Bleiberg's opinion (AR 21). Dr. Sarvepalli, an internist, began treating plaintiff in November 2002 (AR 349).  In a medical examination report, Dr. Sarvepalli stated that plaintiff suffered from low back pain, sleep apnea, TIA and hyperlipidemia (AR 349).[2]  Dr. Sarvepalli also stated that plaintiff had abnormal MRI findings of the LS Spine and brain (AR 349). Dr. Sarvepalli noted that plaintiff had been evaluated by Dr. Bleiberg and apparently agreed with Dr. Bleiberg's limitations (AR 349-351).  Although Dr. Sarvepalli treated plaintiff for over one year, the record does not appear to contain any treatment notes.  As with Dr. Bleiberg, the ALJ should have contacted Dr. Sarvepalli to obtain his treatment notes before simply dismissing the doctor's opinion.  Accordingly, on remand, the ALJ should obtain Dr. Sarvepalli's treatment notes.

---

[2] The doctor included another impairment that is illegible.

### 2.      Consulting physician

James H. Coretti, D.O., an orthopedic examiner, performed an examination of plaintiff in January 2003 for the Montcalm County Family Independence Agency (AR 197).  The doctor concluded that plaintiff had positive objective evidence to support the diagnosis of osteoarthritis of the hands, neck and lumbar spine (AR 203).  Dr. Coretti reviewed x-rays of plaintiff's cervical spine, lumbar spine, right hand and left hand, as well as MRI studies of his cervical and lumbar spine (AR 203).  The x-rays showed advanced degenerative changes at C5-C6 with lesser changes at C4-C5; a considerable degree of degenerative changes at L5-S1, with degenerative changes as L3-L4 and L4-L5; degenerative changes in his right hand at the distal interphalangeal articulation; and degenerative changes in his left hand at the distal interphalangeal articulation at the second, third, fourth and fifth digits (AR 203).  The MRI studies indicated nothing additional in his cervical spine, but the MRI of his lumbar spine indicated evidence of a posterior annular tear at L4-L5 and osteophytic changes at L5-S1 on the right (AR 203).

Doctor Coretti concluded that from an orthopedic standpoint, plaintiff "would be classified for sedentary work activity only" (AR 204).  The ALJ found that plaintiff's clinical presentation portrayed less serious dysfunction (AR 21).  The ALJ found that Dr. Coretti's opinion was contraindicated by substantial evidence in the record, "not the least of which are the clinician's own objective findings" (AR 21-22).  Specifically, the ALJ stated that:

> [W]ith the exception of some spinal limitation of motion, the claimant's examination was relatively benign (i.e., normal shoulder, elbow, hip, ankle, wrist, MP, PIP and DIP joints mobility; normal manual sexterity bilaterally; full apposition of the thumb to all fingers of both hands; no ulnar wasting; normal gait, including heel, toe and tandem walking; able to perform deep-knee bends, squat, and recover without assistance; straight leg raising was negatve; no radicular symptomatology; no sensory or reflex anomalies; normal peripheral pulses were normal [sic]; no muscle spasm, or spinal percussive/palpable tenderness).

(AR 22).

It appears to the court that Dr. Coretti's conclusion, which was based in part on four x-rays and two MRI studies, was supported by objective medical evidence. On remand, the Commissioner should re-evaluate Dr. Coretti's findings in conjunction with the complete records of Drs. Bleiberg and Sarvepalli.

C.   **The ALJ's finding that the plaintiff could return to his past relevant work and/or that his skills would transfer to light work had no legal or factual support. In addition, the ALJ did not find a sufficient number of jobs that plaintiff could perform in order to carry the Secretary's [sic] burden on that issue.**

Finally, plaintiff contests the ALJ's conclusion that he could return to his past relevant work as a machine operator (AR 23).  It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).  To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *See Studaway v. Secretary of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); *see also* 20 C.F.R. § 404.1565.

A VE's testimony is not required when the ALJ determines that  a claimant is not disabled at step four of the sequential evaluation. *See Banks v. Massanari*, 258 F. 3d 820, 827 (8th Cir. 2001)  (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Secretary of Health and Human Servs.*, No. 90-2084, 1991 WL 100547 at *3 (6th Cir. June 11, 1991); *Rivera v. Barnhart*, 239 F. Supp. 2d 413, 421 (D. Del. 2002).  However, the ALJ may use

11

a vocational expert's services in determining whether a claimant can perform his past relevant work. 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). *See, e.g., Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding whether the claimant can perform his past relevant work at step four of the evaluation).

Here, the ALJ used the vocational expert's (VE's) testimony to assist him in deciding whether plaintiff could perform his past relevant work (AR 22). However, the VE's testimony is somewhat confusing. In response to the ALJ's first hypothetical question, which assumed an individual capable of performing light work, the VE testified that such a person could not perform plaintiff's past relevant work of a machine operator as he performed it, apparently because this work was medium work (AR 22, 431-32). In response to a second hypothetical question, the VE testified that such a person could perform other machine operator positions at the light exertional level, and that some 2,500 jobs exist in Michigan (AR 22, 431-32). It is unclear whether the VE's testimony meant (1) that plaintiff's past relevant work machine in a operator position was ordinarily performed in the national economy as a light work position (i.e., evidence supporting a step four determination), or (2) that the 2,500 machine operator positions represent similar work that plaintiff could perform (i.e., evidence supporting a step five determination).

Accordingly, on remand, the Commissioner should re-evaluate the evidence to determine whether plaintiff can perform his past relevant work as a machine operator.

12

IV.     **Recommendation**

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of § 405(g). On remand, the Commissioner should obtain all of plaintiff's medical records from Drs. Bleiberg and Sarvepalli and, if necessary, re-evaluate plaintiff's ability to perform his past relevant work.

Dated:  January 4, 2007             /s/ Hugh W. Brenneman, Jr.
                                    Hugh W. Brenneman, Jr.
                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).